## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

**JOHN HASLAM,**

       **Petitioner,**             **CASE NO. 2:09-CV-842**
                             **JUDGE GREGORY L. FROST**
       **v.**                  **MAGISTRATE JUDGE E.A. PRESTON DEAVERS**

**WARDEN, NOBLE CORRECTIONAL
INSTITUTION,**

       **Respondent.**

## ORDER and
## REPORT AND RECOMMENDATION

Petitioner, a state prisoner, brings the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. §2254. This matter is before the Court on the instant motion, respondent's motion to dismiss, petitioner's reply, and the exhibits of the parties. For the reasons that follow, the Magistrate Judge **RECOMMENDS** that respondent's motion to dismiss be **GRANTED.** Petitioner's request for an evidentiary hearing is **DENIED.**

## FACTS and PROCEDURAL HISTORY

The Ohio Seventh District Court of Appeals summarized the facts and procedural history of this case as follows:

> In 1996, Haslam pleaded guilty to one count of attempted intimidation, a felony offense of violence which triggered a weapons disability. In the July 8, 1996 Judgment Entry on Plea of Guilty, the trial court noted that Haslam had requested that the court permit him to "carry a firearm limited to his particular profession." In its December 16, 1996 Judgment Entry on Sentence, the trial court did not mention Haslam's firearm rights or weapons disability. On February 4, 1997, the trial court filed a separate entry, stating: "It is hereby ordered that the Defendant is hereby allowed to carry a firearm restricted to his employment as a guide for turkey hunters and

for his employment training dogs. The Defendant is not allowed to have a firearm in his possession for any recreational purpose."

On November 30, 2006, Agent Erryl Wolgemuth met Haslam while Wolgemuth was on a vacation hunting trip. Haslam made statements to Wolgemuth that caused Wolgemuth to suspect that he was engaging in illegal hunts and poaching activities. Wolgemuth and Agent Mark Randy Smith organized an undercover investigation of Haslam and other hunters in the region, through the Ohio Department of Natural Resources Division of Wildlife and the U.S. Fish and Wildlife Service. The agents spent the afternoon with Haslam on December 10, 2006 in order to set up a deer hunting trip. Haslam led the agents on a deer hunt from December 27 to December 30, 2006. Haslam also led the agents on a turkey hunt during April of 2007.

Subsequent to the investigations, Haslam was indicted on eight counts of having weapons while under disability, though the State dropped one count prior to trial. At trial, the State offered the testimony of agents Wolgemuth and Smith, and entered the following documents into evidence: Haslam's 1996 conviction; a picture dated December 8, 2006 of Haslam with a dead deer; a picture of agent Wolgemuth holding a muzzleloading rifle and Haslam's cousin holding a 300 Savage rifle both of which Haslam lent to them; a picture of the deer hunting group, showing Haslam carrying a muzzleloading rifle; and, the 300 Savage rifle confiscated from Haslam's residence. In support of his defense, Haslam testified at trial and offered the 1996 Judgment Entry on Plea of Guilty and the 1997 Judgment Entry partially limiting Haslam's weapons disability.

According to the testimony offered by the State, Haslam told the agents that he had used a muzzleloading rifle to shoot a deer on December 1, 2006. When the officers met with Haslam at Haslam's residence on December 10, 2006, Haslam showed the officers his 300 Savage Rifle. The agents again saw the 300 Savage Rifle in Haslam's possession while they were at his house on December 27, 2006. During the guided deer hunt the officers saw Haslam carry two different muzzleloading rifles. On December 29, 2006, Haslam carried a muzzleloading rifle

2

that he had borrowed from his cousin, Charlie Frye. On December 30, 2006, Haslam carried his own muzzleloading rifle. Later on the 30th, at Haslam's residence agent Wolgemuth saw Haslam hand the 300 Savage Rifle to his cousin, Levi Haslam. The agents met with Haslam again in April 2007, to go on a guided turkey hunt. On April 22, 2007 the agents were target shooting with various firearms, using targets that Haslam had set up for them to use prior to their turkey hunt. They discussed marksmanship with Haslam, and Haslam demonstrated his skills by target shooting with an agent's .22 caliber handgun.

During testimony for the defense, Haslam stated that he leads hunting trips in Ohio and West Virginia. Haslam admitted to having the firearms in his possession at some point during all of the dates alleged, though he disputed some of the details. Haslam stated that he thought the judge had given him the right to use firearms for "hunting and food for my table and to make money." Haslam thought the incidents of possession were in the scope of his 1997 weapons disability limitation, with the possible exception of his use of the handgun on April 22, 2007.

The jury convicted Haslam on all seven counts, and the trial court subsequently held a sentencing hearing. The trial court stated that the presentence investigation report indicated a pattern of drug and alcohol abuse, failure to respond to past sanctions, an extensive criminal history, and violation of judicial release. The court indicated that it had considered the purposes and principles of sentencing, and the seriousness and recidivism factors in the case. The trial court then imposed a sentence of one year for each count, to be served consecutively.

*State v. Haslam*, No. 08 MO 3, 2009 WL 904042 (Ohio App. 7th Dist. March 31, 2009).

Petitioner filed a timely appeal, in which he asserted the following assignments of error:

1. Because the trial court's sentencing entry relied upon former R.C. 2929.14(B) as a basis for imposing seven consecutive one-year sentences against John A. Haslam, the sentence relied upon an unconstitutional provision of Ohio law, and must be

vacated and remanded.

2.  Because a valid trial court Entry from 1997 had granted John A. Haslam relief from disability during his non-recreational service as a hunting guide, the convictions against him are legally void, and must be vacated.

3.  John A. Haslam was denied his state and federal constitutional rights to due process and a fair trial when the trial court entered a judgment of conviction against him in the absence of sufficient evidence to support the conviction.

4.  Where the trial court does not merge for purposes of sentencing and duplicative criminal counts, the consecutive sentences that result are void. Furthermore, the sentence must be vacated because it violates double jeopardy protections and due process of law.

*See id.* at *2 -*9.  On March 31, 2009, the appellate court vacated the trial court's judgment on Counts Two, Three, and Six, affirmed the trial court's judgment on Counts One, Four, Five and Seven, and remanded the case to the trial court to merge Counts One and Five. *Id.* Petitioner did not timely appeal.  On May 4, 2009, the trial court re-sentenced petitioner, merging Counts One and Five, and imposed a sentence of three years community control to be served consecutively to the prior sentences imposed on Counts Four and Seven. Altogether, petitioner received a sentence  for a term of two years incarceration plus three years community control. *Exhibits 13, 14 to Motion to Dismiss.*  Petitioner filed a motion for a stay pending disposition of the appeal which the trial court denied.  *Exhibit 17 to Motion to Dismiss.*  On July 8, 2009, petitioner filed a motion for delayed  appeal of the appellate court's March 31, 2009, decision. *Exhibit 19 to Motion to Dismiss*.  On August 26, 2009, the Ohio Supreme Court denied petitioner's motion for delayed appeal. *State v. Haslam*, 122

4

Ohio St.3d 1501 (Ohio 2009).

On September 23, 2009, petitioner filed the instant *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. He alleges that he is in the custody of the respondent in violation of the Constitution of the United States based upon the following grounds:

> 1. Denial of right of appeal.
>
> Because counsel on appeal refused to honor my wishes to raise reversible errors which I wanted raised.
>
> 2. Sentence contrary to law.
>
> The sentence is unlawfully induced by an entrapment conviction and against the holdings of the federal and U.S. Supreme and Supreme Courts.
>
> 3. Conviction unlawfully obtained by way of entrapment.
>
> Because the "two" undercover officers set up a practice shoot at my job site and hired me for their instructor and sought my service with testing out a shot out then arrested me.
>
> 4. False information and prosecutor misconduct.
>
> Because after the death of my judge, a mysterious entry had appeared with added restrictions. And it had no signatures.

It is the position of the respondent that all of petitioner's claims are procedurally defaulted.

## PROCEDURAL DEFAULT

A state criminal defendant with federal constitutional claims must present those claims to the highest court of the state for consideration prior to obtaining federal habeas corpus review on his claims. 28 U.S.C. § 2254(b), (c). If he fails to do so, but still has an

5

avenue open to him by which he may present his claims to the state courts, his petition may be dismissed as unexhausted. *Id.; Anderson v. Harless,* 459 U.S. 4, 6 (1982)( *per curiam*); *Picard v. Connor,* 404 U.S. 270, 275-76 (1971). If the petitioner can no longer present his claims to a state court, he has waived his right to present these claims for federal habeas review unless he establishes cause for the procedural default and actual prejudice resulting from the alleged constitutional error. *Murray v. Carrier,* 477 U.S. 478, 485 (1986); *Engle v. Isaac,* 456 U.S. 107, 129 (1982); *Wainwright v. Sykes,* 433 U.S. 72, 87 (1977).

This Court must conduct a four-part analysis to determine whether a claim is procedurally defaulted and thereby barred from federal habeas corpus review. *Maupin v. Smith,* 785 F.2d 135, 138 (6th Cir. 1986). "First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule." *Id.* Second, the Court must determine whether the state courts actually enforced the state procedural sanction. *Id.* Third, the court must decide whether the state procedural forfeiture is an 'adequate and independent' state ground on which the state can rely to foreclose review of a federal constitutional claim. *Id.* Finally, if the Court has determined that a petitioner did not comply with a state procedural rule and that the rule was an adequate and independent state ground, then the petitioner must demonstrate that there was cause for him not to follow the procedural rule and that he was actually prejudiced by the alleged constitutional error. *Id.* This "cause and prejudice" analysis also applies to failures to raise or preserve issues for review at the appellate level. *Leroy v. Marshall,* 757 F.2d 94 (6th Cir.1985).

In claim two, petitioner asserts that his sentence is "contrary to law" and was "unlawfully induced [b]y entrapment." *See Petition*. In claim three, petitioner again asserts that his conviction was unlawfully obtained by entrapment. In claim four, petitioner asserts he was denied due process due to "false information" and prosecutorial misconduct. *Id*. All of the foregoing claims could and should have been raised on direct appeal, but were not. Petitioner first attempted to present these claims, as well as claim one, in which he asserts that he was denied the right to appeal because his attorney refused to raise all of the claims he requested, to the Ohio Supreme Court. *See Exhibit 19 to Motion to Dismiss*. Petitioner, however, did not file a timely appeal. The Ohio Supreme Court rejected his motion for delayed appeal pursuant to its Rule of Practice II, Section 2(A)(4)(a). The United States Court of Appeals for the Sixth Circuit has held that the Ohio Supreme Court's denial of a motion for delayed appeal constitutes a procedural default of the claims raised therein. *Bonilla v. Hurley,* 370 F.3d 494, 497 (6th Cir.2004). On this basis, the Court concludes that petitioner has waived all of his claims for federal habeas corpus review. Further, he has failed to demonstrate cause for his procedural default or actual prejudice resulting from the alleged constitutional violations.

Beyond the four-part *Maupin* analysis, this Court is required to consider whether this is "an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier,* 477 U.S. at 491; *see also Sawyer v. Whitley,* 505 U.S. 333 (1992).

Petitioner contends that he was entrapped by police and was permitted to handle

7

a gun and therefore wrongly convicted.  However, petitioner's entrapment argument was one for the jury, and not for this Court to consider at an evidentiary hearing.  Further, the state appellate court addressed petitioner's claim of insufficiency of the evidence based on the judgment entry of his prior conviction, and vacated several of his convictions.  *See State v. Haslam, supra*, 2009 WL 904042 at *4-*9.  Liberally construing petitioner's pleadings to raise a claim of insufficiency of the evidence, such claim, for the reasons already discussed, is waived and not properly before this Court.

> The United States Supreme Court has held that if a habeas petitioner "presents evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error, the petitioner should be allowed to pass through the gateway and argue the merits of his underlying claims." *Schlup* [*v. Delo*], 513 U.S. [298], 316, 115 S.Ct. 851 [(1995)]. Thus, the threshold inquiry is whether "new facts raise[ ] sufficient doubt about [the petitioner's] guilt to undermine confidence in the result of the trial." *Id.* at 317, 115 S.Ct. 851. To establish actual innocence, "a petitioner must show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Id.* at 327, 115 S.Ct. 851. The Court has noted that "actual innocence means factual innocence, not mere legal insufficiency." *Bousley v. United States,* 523 U.S. 614, 623, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998). "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial." *Schlup,* 513 U.S. at 324, 115 S.Ct. 851. The Court counseled however, that the actual innocence exception should "remain rare" and "only be applied in the 'extraordinary case.' " *Id.* at 321, 115 S.Ct. 851.

*Souter v. Jones*, 395 F.3d 577, 589-90 (6th Cir. 2005)(footnote omitted).  Petitioner has failed

to meet this standard here.

For all the foregoing reasons, the Magistrate Judge **RECOMMENDS** that respondent's motion to dismiss be **GRANTED.**  Petitioner's request for an evidentiary hearing is **DENIED.**

If any party objects to this *Report and Recommendation*, that party may, within fourteen (14) days of the date of this report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation. See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

The parties are further advised that, if they intend to file an appeal of any adverse decision, they may submit arguments in any objections filed, regarding whether a certificate of appealability should issue.

 /s/ Elizabeth A. Preston Deavers  
Elizabeth A. Preston Deavers  
United States Magistrate Judge

Date: July 16, 2010

11